Jackson F. LEE and Cumberland Broad-
casting Corp., Appellants,

v.

FEDERAL COMMUNICATIONS COM-
MISSION, Appellee,

Atlantic Telecasting Corp., Intervenor.

No. 20187.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 9, 1966.

Decided Jan. 19, 1967.

Mr. Edwin R. Schneider, Jr., Washington, D. C., for appellants. Messrs. Robert A. Marmet and Peter L. Koff, Washington, D. C., also entered appearances for appellants.

Mr. Robert D. Hadl, Counsel, F. C. C., with whom Messrs. Henry Geller, Gen. Counsel, and John H. Conlin, Associate Gen. Counsel, F. C. C., were on the brief, for appellee. Mrs. Lenore G. Ehrig, Counsel, F. C. C., also entered an appearance for appellee.

Mr. Edward P. Taptich, Washington, D. C., with whom Mr. Arthur Scheiner, Washington, D. C., was on the brief, for intervenor.

Before FAHY and DANAHER, Circuit Judges, and BASTIAN, Senior Circuit Judge.

FAHY, Circuit Judge.

On December 11, 1964, Atlantic Telecasting Corporation, intervenor now and licensee of VHF television station WECT at Wilmington, North Carolina, applied to the Commission for a construction permit to move its transmitter site and tower twenty-two miles farther inland toward Fayetteville, North Carolina, to increase its antenna height, and to change its antenna system. Almost thirteen months later, January 4, 1966, appellant Jackson F. Lee, licensee of standard broadcast station WFAI, serving Fayetteville, filed a letter with the Commission stating he was preparing an ap-

plication for a new UHF television station to serve Fayetteville and he would be the dominant shareholder in this venture. The Lee letter also stated that Atlantic's application if granted would significantly increase the quality of WECT's signal in Fayetteville. He asked the Commission to designate Atlantic's application for a hearing on issues concerning the impact of the proposed strong VHF signal upon the development and survival of local UHF telecasting in Fayetteville. The letter continued that on the basis of study of local competitive conditions Lee concluded that prospects for development of a local station in Fayetteville were favorable but any adverse development, such as the intrusion of a "strong new signal," would have a seriously adverse effect upon any such development.

Without a hearing the Commission on January 12, 1966, granted Atlantic's application. On February 7 following, the anticipated application for a new UHF television station to serve Fayetteville was filed in the name of Cumberland Broadcasting Corp., of which Mr. Lee was President. Two days later Lee and Cumberland jointly petitioned for reconsideration of the grant to Atlantic. This was denied as to Lee, accompanied by a Commission Memorandum and Order, and dismissed as to Cumberland for lack of standing.

Although the claim of Cumberland to be heard as a party in interest is not abandoned, the Commission's consideration of the merits of the petition at the instance of Lee relieves the court of the necessity of passing upon the standing of Cumberland. It is conceded that Cumberland's fate on the merits can be no better than Lee's.

The appeal stresses the petition for reconsideration rather than relying upon the Lee letter. And while the question is whether the petition for reconsideration is sufficient to require the Commission to set Atlantic's application for an evidentiary hearing, the situation is unlike that presented in Valley Telecasting Co. v. FCC, 118 U.S.App.D.C. 410, 336 F.2d 914, for the petition here was not a "first time" effort to obtain a hearing. By his letter Lee had sought a hearing prior to the Commission's grant of Atlantic's application. This we think is a factor properly to be considered in appraising the strength of the showing required to obtain a hearing under the provisions of Section 405 of the Act. Be that as it may, it is our opinion that on this review the reasons set forth by the Commission in its Memorandum Opinion and Order support its action in granting the Atlantic application without a hearing.

Appellant Lee principally argues that such action does not serve the public interest because it is inconsistent with the steady course the Commission has followed in seeking to avoid intrusion of a new VHF television signal into an area where this would discourage or destroy prospects for development of local UHF television stations, citing a number of Commission decisions and, also, the decision of this court in Louisiana Television Corp. v. FCC, 121 U.S. App.D.C. 24, 347 F.2d 808, reversing the Commission in departing from the course referred to. The deep concern of the Commission for protection of UHF stations is not doubted and is well documented, but it is not controlling on the issue of a hearing in all circumstances. True it is that Lee advanced several grounds in support of its position: that grant of the application would place a city-grade signal in Fayetteville for the first time, Atlantic would establish auxiliary studios in Fayetteville to cover local events, Atlantic's sales department would significantly increase its attention to Fayetteville, and it was unlikely Cumberland would be able to carry out its program plans based upon the assumption of availability of network programs. Having made these allegations Lee insists the denial of a hearing was arbitrary because inconsistent with the grant of hearings in other Commission decisions involving UHF problems.

For the court it would be an easy solution to remand for a hearing, but the de-

cision of the Commission is entitled to respectful analysis. We cannot well disagree with the Commission's conclusion that Lee failed to show, in a manner sufficient to require a hearing, that Cumberland would be unable to secure network programming if WECT's signal were strengthened. The Commission concluded, also, that the stronger signals which the proposed operation of WECT would provide to Fayetteville had not been shown by Lee to be a factor which would imperil the ability of a UHF television station in Fayetteville to compete successfully. Here too we are not convinced otherwise. As the Commission pointed out,

> Cumberland filed its application with the knowledge that it would have to compete with a multiplicity of VHF television services within its own proposed Grade B contour. * * * If Cumberland based its proposal on the present status of competition, the only element which would be different would be the increase in strength of the WECT signal to Fayetteville. Yet this is a question with which Lee has not attempted to deal.

As the Commission stated, WECT would not introduce a new VHF television service into Fayetteville, there would be a gain area of 8,075 square miles inhabited by 736,157 persons within WECT's proposed Grade B contour, an increase of 105 per cent of the population presently within this predicted contour, and there would be a reduction of 12.7 per cent of the area within WECT's present predicted Grade B contour now wasted over the waters of the Atlantic Ocean, all this "representing a more efficient use of the frequency consistent with the mandate of Section 307(b)" of the Act.

Though we might wish our problem were made easier by a hearing we are not sufficiently persuaded to require this when the Commission, as we think, has given adequate reasons for not holding a hearing, and for concluding that grant of the application was in the public interest.

Affirmed.